1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10

LINDA M. RAYMENT,

11

Plaintiff,

12

v.

13

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

14

15

Defendant.

16

CASE NO. 3:15-ocv-05904 JRC

ORDER ON PLAINTIFF'S
COMPLAINT

17    This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18 Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19 Magistrate Judge and Consent Form, Dkt. 3; Consent to Proceed Before a United States

20 Magistrate Judge, Dkt. 4). This matter has been fully briefed (*see* Dkt. 13, 18, 19).

21    After considering and reviewing the record, the Court concludes that the

22 Administrative Law Judge's ("ALJ") written decision is supported by substantial

23 evidence in the record as a whole. The Court concludes that the ALJ properly assessed

24

the medical opinion evidence, plaintiff's allegations of disabling limitations, and the lay witness statements. Thus, the Commissioner's decision is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

BACKGROUND

Plaintiff, LINDA M. RAYMENT, was born in 1959 and was 48 years old on the alleged date of disability onset of July 16, 2007 (*see* AR. 186-92). Plaintiff completed high school (AR. 45).  Plaintiff has work experience as a bartender, cook, waitress, dishwasher and administrative office assistant (AR. 48-49, 257-65).

According to the ALJ, through the date last insured, plaintiff has at least the severe impairments of "lumbar spondylosis, degenerative disc disease, facet arthropathy, and chronic pain disorder (20 CFR 404.1520(c))" (AR. 12).

At the time of the hearing, plaintiff was living in a house with her husband, her daughter and her daughter's fiancé (AR. 45).

PROCEDURAL HISTORY

Plaintiff's application for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act was denied initially and following reconsideration (*see* AR. 82-91, 93-103). Plaintiff's requested hearing was held before Administrative Law Judge James W. Sherry ("the ALJ") on June 25, 2015 (*see* AR. 33-80). On August 27, 2015, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 7-32).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Whether or not the ALJ properly evaluated the medical evidence; (2) Whether or not the ALJ

properly evaluated plaintiff's testimony; (3) Whether or not the ALJ properly evaluated

the lay evidence; (4) Whether or not the ALJ properly assessed plaintiff's residual

functional capacity; and (5) Whether or not the ALJ erred by basing his step four and five

findings on a residual functional capacity assessment that did not include all of plaintiff's

limitations (*see* Dkt. 13, p. 2).

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

denial of social security benefits if the ALJ's findings are based on legal error or not

supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

1999)).

DISCUSSION

**(1)     Whether the ALJ properly evaluated the medical evidence.**

Plaintiff maintains the ALJ erred in evaluating the medical opinions of Paul J.

Allen, M.D., Robert G.R. Lang, M.D., Emily Clay, M.D., and Drew Stevick, M.D. (*see*

Dkt. 13, pp. 3-10).

The ALJ is responsible for evaluating a claimant's testimony and resolving

ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722

(9th Cir. 1998) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

Determining whether or not inconsistencies in the medical evidence "are material (or are

in fact inconsistencies at all) and whether certain factors are relevant to discount" the

opinions of medical experts "falls within this responsibility." *Morgan v. Comm'r of Soc.*

*Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999)). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and evaluating a claimant's testimony lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (quoting *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (citing *Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

      a.   Paul J. Allen, M.D.

Dr. Allen treated plaintiff for pain management for complaints of "low back pain, buttock pain and a burning sensation down both legs" (AR. 569; *see also* AR. 570-73). Dr. Allen diagnosed plaintiff with chronic low back pain "with MRI evidence of degenerative spondylolysis around the L-3-4 level with fluid present at facet joints bilaterally at L304" (AR. 570). Dr. Allen also diagnosed plaintiff with status post facet injections without lasting benefit (AR. 570). At the end of his treatment note after a September 2007 appointment, Dr. Allen noted that plaintiff had last worked in July 2002, that he had recommended plaintiff to continue off work in August 2002, but that the "[p]lan is to RTW [return to work] ASAP with lifting restrictions" (AR. 573). With respect to restrictions, Dr. Allen wrote "unknown" and asked "Is part-time, limited duty available at the work place?" (AR. 573).

The ALJ gave little weight to Dr. Allen's opinion questioning whether part-time work was available (AR. 21). The ALJ noted the opinion was (1) "of less value when considering what the claimant is able to do on a function-by-function analysis" and (2) merely a suggestion and not a limitation (AR. 21).

1    Plaintiff argues the ALJ "does not state any legitimate reason for rejecting" Dr.

2    Allen's opinion (Dkt. 13, p. 3). The Court disagrees. An ALJ need not discuss evidence

3    that is neither significant nor probative. *See Howard ex rel. Wolff v. Barnhart,* 341 F.3d

4    1006, 1012 (9th Cir.2003); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). A

5    doctor's opinion devoid of any opined limitations is not significant or probative. *See*, *e.g.*,

6    *Hughes v. Colvin*, No. C13-0143-MAT, 2013 WL 11319016, at *3 (W.D. Wash. Aug. 14,

7    2013), *aff'd*, 599 F. App'x 765 (9th Cir. 2015) (citing *Turner v. Comm'r of Social Sec.*

8    *Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (explaining that where a doctor's opinion

9    does not assign any specific limitations, an ALJ need not provide reasons for rejecting the

10   opinion because none of the conclusions were actually rejected)). The Court agrees with

11   the ALJ that Dr. Allen did not opine that plaintiff is limited to part-time work. Rather, Dr.

12   Allen indicated his plan that plaintiff should return to work as soon as possible, he

13   indicated he did not know what restrictions would be necessary, and he asked whether

14   part-time work was available (*see* AR. 573). Given that Dr. Allen did not assign any

15   specific limitations to plaintiff, the ALJ did not err in assigning minimal weight to Dr.

16   Allen's opinion because no conclusions were actually rejected.

17        b.  Michael Boyd, M.D.

18        Plaintiff summarized Dr. Boyd's treatment records and various visits with plaintiff

19   (*see* Dkt. 13, pp. 4-10). However, plaintiff does not assign any errors to the ALJ's

20   treatment of Dr. Boyd's medical opinion (*see* Dkt. 13, pp. 4-10). The Court "cannot

21   manufacture arguments" for plaintiff, and can only review issues argued with specificity

22   in plaintiff's opening brief. *Indep. Towers of Washington v. Washington*, 350 F.3d 925,

929 (9th Cir. 2003) (citation and quotation omitted); *see also Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) ("We do not address this finding because Carmickle failed to argue this issue with any specificity in his briefing."); *Volkle v. Astrue*, No. C11-1881-MJP-JPD, 2012 WL 2576335, at *3 n.2 (W.D. Wash. June 14, 2012), *report and recommendation adopted*, No. C11-1881-MJP, 2012 WL 2573065 (W.D. Wash. July 2, 2012) (same). Accordingly, in the absence of argument from plaintiff regarding the ALJ's treatment of Dr. Boyd's medical opinion, the Court finds that plaintiff has failed to argue any issues with specificity.

At the end of her summary of the medical evidence, plaintiff argues that the Court "should hold that the ALJ's failure to properly evaluate all of the medical evidence is harmful error, as a reasonable ALJ who properly evaluated the medical evidence could have reached a different disability determination" (Dkt. 13, p. 10). As an initial matter, plaintiff essentially asks this Court to reweigh the medical evidence. However, that is not the role of the Court. Rather, as the Ninth Circuit has explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). Thus, the Court will not reweigh the medical evidence to determine whether the ALJ could have come to a different conclusion. Moreover, this Court declines the invitation to seek out gremlins of

error in the record and must rely on the arguments presented, not the arguments plaintiff

has not presented. *See Carmickle*, 533 F.3d at 1161 n.2. Accordingly, plaintiff has failed

to establish that the ALJ erred in his treatment of Dr. Boyd's medical opinion.

        c.  Robert G.R. Lang, M.D.

Plaintiff also summarized Dr. Lang's treatment records (*see* Dkt. 13, pp. 4-10).

She then argues that the ALJ erred in evaluating Dr. Lang's opinion because "[n]one of

the ALJ's reasons are legitimate" and the ALJ erred in failing to give Dr. Lang's opinions

the "highest weight" because he is a treating physician (Dkt. 13, p. 9).

Dr. Lang began treating plaintiff in 2007 for back pain following a workplace

injury (AR. 400-01). At follow-up visits, Dr. Lang informed plaintiff that inactivity is not

beneficial, expressed concern about "prolonged incapacity", and encouraged plaintiff to

"work through her discomfort" (AR. 389, 391, 395, 399). In January 2008, Dr. Lang

encouraged plaintiff to "return to light work" (AR. 395). In March 2008, upon learning

plaintiff could have a job in the accounting department at a casino, Dr. Lang suggested

plaintiff "check to see if she can return part time four hours a day to begin" (AR. 391). At

another visit in March 2008, Dr. Lang "recommend[ed] a vocational consultant to assist

with [plaintiff's] return to light duty work" (AR. 389). In June 2008, Dr. Lang suggested

a work hardening program at the end of a 7-week counseling program (AR. 385). In

August and September 2008, Dr. Lang again suggested vocational counseling so that

plaintiff could return to light work (AR. 380, 382). In December 2008, Dr. Lang

suggested that plaintiff progress to work conditioning and work hardening (AR. 375). In

October 2009, Dr. Lang opined that plaintiff should be able to return to work fulltime as a receptionist following a four week work conditioning and hardening program (AR. 356).

The ALJ discounted Dr. Lang's medical opinions "that the claimant was unable to return to work or was limited to part-time work" (AR. 22). The ALJ noted that this opinion was "inconsistent with [Dr. Lang's] encouragement of the claimant returning to light duty work or seeking out work with a vocational counselor" (AR. 22). The ALJ also noted Dr. Lang's opinion was inconsistent with the clinical observations in the treatment record" (AR. 22). However, the ALJ found Dr. Lang's opinion during treatment—that plaintiff could perform light work full-time—consistent with plaintiff's activities of daily living, the objective imaging, and clinical observations and thus gave that opinion some weight (AR. 22).

As an initial matter, plaintiff again asks the Court to reweigh the medical evidence and come to a different conclusion (*see* Dkt. 13, p. 10). However, as noted above, the Court may only address those arguments presented with specificity, and the Court declines to manufacture arguments for plaintiff. *See Carmickle*, 533 F.3d at 1161 n.2.

Plaintiff also argues that the ALJ erred in giving little weight to Dr. Lang's opinions regarding plaintiff's ability to return to work and argues that "[n]one of the ALJ's reasons are legitimate" (Dkt. 13, p. 9). However, an ALJ may discount the opinion of a treating or examining physician if the opinion is inconsistent with the treating physician's objective examination, findings, and records. *See Valentine v. Comm'r SSA*, 574 F.3d 685, 692 (9th Cir. 2009); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (noting an ALJ may reject a doctor's opinion where answers on a questionnaire are

"inconsistent with the medical records"); *see also Hunt v. Colvin*, 954 F. Supp. 2d 1181, 1189 (W.D. Wash. 2013) ("[B]ecause Plaintiff has not shown that the ALJ erred in finding that [the doctor's] opinion was not adequately supported by clinical findings, the ALJ's first reason for discounting [the doctor's] opinion should be affirmed."). As noted above, throughout the relevant period of disability, Dr. Lang opined that plaintiff should return to work full-time and that she should be able to perform light duty work (*see*, *e.g.*, AR. 356, 380, 382, 385, 389, 395). Thus, the ALJ properly rejected Dr. Lang's inconsistent statements opining that plaintiff could only return to part-time work. As the ALJ offered at least one specific and legitimate reason supported by substantial evidence to discount Dr. Lang's opinion, the Court upholds the ALJ's determination. *See Carmickle*, 533 F.3d at 1162.

Plaintiff also asserts that the ALJ failed to give the "proper deference" to Dr. Lang's medical opinion and failed to give the "highest weight" and/or "controlling weight" to Dr. Lang's opinion instead of Dr. Stevick's medical opinion (Dkt. 13, p. 9). In general, more weight is given to a treating medical source's opinion than to the opinions of those who do not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). However, an ALJ need not accept the opinion of a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings or by the record as a whole. *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)). As noted above, the ALJ properly rejected the portion of Dr. Lang's opinion regarding plaintiff's limitation to

1   return to work on a part-time basis because it was inconsistent and inadequately

2   supported by his treatment records. Thus, the ALJ properly rejected the portion of Dr.

3   Lang's opinion that was unsupported by his clinical records. *See Batson*, 359 F.3d at

4   1195. Accordingly, plaintiff has failed to establish that the ALJ erred in evaluating Dr.

5   Lang's medical opinion.

6          d.   Emily Clay, M.D.

7          Plaintiff also notes that the ALJ gave "little weight" to Dr. Clay's June 2014

8   opinion that plaintiff has functional limitations (Dkt. 13, p. 10). Although plaintiff

9   acknowledges that Dr. Clay's opinion has "limited probative value" for the relevant

10  period of disability, plaintiff argues that Dr. Clay's opinion demonstrates that plaintiff

11  had functional limitations through the date the ALJ issued his decision (*see id.*).

12

13         Plaintiff's assertion does not appear moored to a specific assignment of error, and

14  the Court again declines to consider arguments for plaintiff that plaintiff has not

15  specified. *See Indep. Towers of Washington*, 350 F.3d at 929. Moreover, as noted by

16  defendant, Dr. Clay issued her opinion nearly four years after the date last insured (*see*

17  AR. 25, 642-47). Although "medical evaluations made after the expiration of a claimant's

18  insured status are relevant to an evaluation of the pre-expiration condition", *see Smith v.*

19  *Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988), plaintiff concedes that Dr. Clay's opinion

20  was of limited probative value given that it related to a period nearly four years after

21  plaintiff's date last insured. *See*, *e.g.*, *Capobres v. Astrue*, No. CV 1:09-682-REB, 2011

22  WL 1114256, at *5 (D. Idaho Mar. 25, 2011) (finding that the ALJ did not err in rejecting

23  the doctor's opinion where it was offered after the relevant period of disability and "was

24

ORDER ON PLAINTIFF'S COMPLAINT - 10

1  not offered as a retrospective analysis" of the plaintiff's impairments during the relevant

2  period). Accordingly, plaintiff has failed to establish that the ALJ erred in considering Dr.

3  Clay's medical opinion.

               e.  Drew Stevick, M.D.

4

5  Plaintiff also argues that the ALJ improperly gave "significant weight" to

6  nonexamining physician Dr. Stevick's medical opinion because "contrary to the ALJ's

7  analysis, Dr. Stevick's opinion is actually inconsistent with the medical evidence,

8  including the opinions of Dr. Allen, Dr. Lang, Mr. Mertens, and Ms. Lang" (Dkt. 13, p.

9  9). Plaintiff also argues that Dr. Stevick's opinion was entitled to less weight than Dr.

10  Lang (*id.*, pp. 9-10).

11

12  Dr. Stevick, a State agency medical consultant, offered an opinion on May 22,

13  2013 regarding plaintiff's disability during the relevant period of disability (AR. 99-101).

14  Dr. Stevick opined that plaintiff is "partially credible [and] would have some limits from

15  her conditions, but not to the degree of disability (AR. 99). Dr. Stevick also opined that

16  plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds, stand or walk for

17  six hours and sit for six hours in an eight-hour workday, and sit for six hours in an eight-

18  hour workday" (AR. 99-101).

19  The ALJ gave Dr. Stevick's opinion significant weight, finding it "consistent with

20  the clinical observations during treatment, discussed above, such as walking with a

21  normal gait and having intact strength" (AR. 23). The ALJ also noted that Dr. Stevick's

22  opinion was consistent with the MRIs during the relevant period, plaintiff's exams with

23  the Department for Labor and Industries, and plaintiff's activities of daily living (AR.

24

23). The ALJ also noted that Dr. Stevick's opinion was consistent with Dr. Lang's opinion that plaintiff could return to light duty work (AR. 23).

First, plaintiff argues that the ALJ erred by giving Dr. Stevick's opinion more weight than Dr. Lang's medical opinion (*see* Dkt. 10, p. 9). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. §§ 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester*, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan*, 242 F.3d at 1149 (citing *Magallanes*, 881 F.2d at 752). As an initial matter, the ALJ actually noted that Dr. Stevick's opinion was consistent with Dr. Lang's opinion that plaintiff could return to full-time light duty work (*see* AR. 23). Thus, the ALJ did not reject Dr. Lang's opinion in favor of Dr. Stevick's opinion entirely. Indeed, the ALJ found the opinions compatible, noting that "Dr. Stevick's opinion is also supported in part by Dr. Lang's opinion that the claimant could return to light duty work" (AR. 23). Moreover, as discussed in Section 1 subpart c, *supra*, the Court has already determined that the ALJ properly rejected the portion of Dr. Lang's opinion that was unsupported by his clinical records. *See Batson*, 359 F.3d at 1195. Thus, the ALJ did not err in giving significant weight to Dr. Stevick's opinion while rejecting portions of Dr. Lang's opinion.

Second, plaintiff argues that the ALJ's treatment of Dr. Stevick's opinion is inconsistent with the medical evidence in the record (Dkt. 13, pp. 9-10). According to Social Security Ruling 96-6p, State agency medical consultants "are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6p, 1996 LEXIS 3 at *4. Therefore, regarding State agency medical consultants, the ALJ is "required to consider as opinion evidence" their findings, and also is "required to explain in his decision the weight given to such opinions." *Sawyer v. Astrue*, 303 F. App'x 453, 455 (9th Cir. 2008) (unpublished) (citations omitted). An ALJ may only "reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citing *Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996)); *Andrews*, 53 F.3d at 1041).

Here, the ALJ relied upon substantial evidence in the record to give significant weight to Dr. Stevick's opinion (*see* AR. 23). For example, the ALJ noted that Dr. Stevick's opinion was consistent with Dr. Lang's opinion regarding plaintiff's ability to return to light duty and consistent with the exams for the Department of Labor and Industries (AR. 23). The ALJ also noted that Dr. Stevick's opinion was consistent with plaintiff's activities of daily living, including gardening, going to the casino, and driving (AR. 23). Given that "questions of credibility and resolution of conflicts" are solely the functions of the ALJ, *see Sample*, 694 F.2d at 642, "the ALJ's conclusion must be upheld" where supported by substantial evidence. *See Morgan*, 169 F.3d at 601. Thus, the ALJ properly considered Dr. Stevick's opinion in light of the record as a whole, and

plaintiff has failed to establish that the ALJ erred in considering Dr. Stevick's medical opinion.

**(2)      Whether the ALJ erred in evaluating the lay witness other medical source opinions.**

Plaintiff also avers that the ALJ erred in evaluating the opinions of Occupational Therapist Terry Mertens, Physical Therapist Lisa Lang, and Physical Therapist Lisa Scheuffele (Dkt. 13, pp. 8, 10).

Pursuant to the relevant federal regulations, medical opinions from "other medical sources," such as nurse practitioners, therapists and chiropractors, must be considered. *See* 20 C.F.R. § 404.1513 (d); *see also Turner*, 613 F.3d at 1223-24 (citing 20 C.F.R. § 404.1513(a), (d)); SSR 06-3p, 2006 WL 2329939. "Other medical source" testimony "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Turner*, 613 F.3d at 1224. "Further, the reasons 'germane to each witness' must be specific." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

a.   Terry Mertens, OTR/L and Lisa H. Lang, PT

Mr. Mertens and Ms. Lang began work conditioning treatment with plaintiff in December 2009 (AR. 675). Mr. Mertens and Ms. Lang opined that plaintiff's "[s]ubjective complaints exceed objective findings" (AR. 684). They also discharged plaintiff as ready to return to work on March 8, 2010, three months after the date last insured (*id.*). They opined that plaintiff would be able to function at the "sedentary-light

level of work category" 8 hours a day. They also opined that plaintiff "has not shown any initiative on her own to [return to work] in spite of frequent encouragement to do so" (AR. 684).

The ALJ gave some weight to Mr. Mertens's and Ms. Lang's opinion, noting that "during the course of the work hardening program the therapists had the opportunity to observe the claimant multiple days a week for several weeks" (AR. 23). However, the ALJ noted that greater weight was not given to their opinion because: (1) plaintiff presented with more pain limitations than supported by clinical observations, thus interfering "with the therapists' ability to determine the claimant's residual functional capacity"; (2) they did not have an opportunity to "consider the claimant's various activities" discussed previously, such as plaintiff's regular attendance at a casino; and (3) they did not have access to the other clinical treatment records contradicting their findings (AR. 23).

Plaintiff argues that the ALJ "does not state any legitimate reason for rejecting the opinion of Mr. Mertens and Ms. Lang that prior to March 8, 2010, [plaintiff] could not sit/stand/walk for a full eight hour workday" (Dkt. 13, pp. 8-9). However, the Court finds that the ALJ gave at least two germane reasons for discounting Mr. Mertens's and Ms. Lang's opinions.

First, Mr. Mertens and Ms. Lang opined that plaintiff's complaints exceeded objective findings and that she lacked initiative to return to work. The ALJ determined that their evaluation was thus impeded by plaintiff's lack of initiative and apparent secondary gain motives (*see* AR. 23). Given that even Mr. Mertens and Ms. Lang

acknowledged that plaintiff's pain allegations exceeded the objective evidence, the Court finds that the ALJ's first reason for discounting their opinion is germane. Had plaintiff shown initiative or had her subjective complaints matched the objective evidence, the therapists' opinion may have been different.

Second, an ALJ may discount a physical therapist's opinion to the extent it conflicts with the claimant's daily activities. *Drake v. Comm'r of Soc. Sec.*, No. 3:12-CV-02223-AC, 2014 WL 3591547, at *4 (D. Or. July 21, 2014) (citing *Morgan*, 169 F.3d at 601-02). As noted by the ALJ, plaintiff regularly went to the casino (*see*, *e.g.*, AR. 23), which would undermine the therapists' opinions regarding plaintiff's functional limitations during the relevant period of disability. Thus, the ALJ's second reason for discounting the therapists' opinion is also germane.

Third, the Court finds that failure to review other medical opinions is not a germane reason for discounting the therapists' opinions, especially where, as here, the therapists based their opinions on their own clinical assessment. *See*, *e.g.*, *Couch v. Colvin*, No. 3:12-CV-05990-KLS, 2013 WL 6173022, at *4 (W.D. Wash. Nov. 22, 2013). Nevertheless, because the ALJ offered at least two germane reasons for discounting Mr. Mertens's and Ms. Lang's opinions, the ALJ's treatment of their opinion is affirmed.

> b.  Lisa Scheuffele, PT

Plaintiff also argues that the ALJ erred by giving little weight to the June 2014 opinion of Physical Therapist Lisa Scheuffele (*see* Dkt. 13, p. 10). Ms. Scheuffele opined that plaintiff has functional limitations related to her emotional factors and that she

believed plaintiff would need to change positions or her posture frequently (AR. 635-40). The ALJ rejected Ms. Scheuffele's opinion and gave it little weight in part because it was based upon her treatment of plaintiff over two years after the claimant's date last insured (*see* AR. 25). As conceded by plaintiff, Ms. Scheuffele's opinion is of limited probative value because it is based upon "the time period for which patient was treated" in August 2012 through October 2013 (*see* AR. 640) and not based upon the relevant period of disability. *See*, *e.g.*, *Capobres*, 2011 WL 1114256, at *5. Thus, the ALJ provided a germaine reason and properly discounted Ms. Scheuffele's opinion.

        **(3)**      **Whether the ALJ properly evaluated plaintiff's testimony.**

Plaintiff also maintains that the ALJ erred in discounting her testimony because the ALJ erred (1) in evaluating the medical evidence; (2) in finding objective imaging consistent with plaintiff's ability to perform light work; (3) in finding plaintiff's incontinence and tremors were not as limiting as plaintiff alleged; and (4) in finding plaintiff's activities of daily living undermined her allegations of disabling limitations (Dkt. 13, pp. 10-17).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

1   credibility evaluation," such as reputation for lying, prior inconsistent statements

2   concerning symptoms, and other testimony that "appears less than candid." *Smolen*, 80

3   F.3d at 1284. The ALJ may also consider if a claimant's complaints are "inconsistent

4   with clinical observations[.]" *Regennitter v. Commissioner of Social Sec. Admin.*, 166

5   F.3d 1294, 1297 (9th Cir. 1998). Questions of credibility are solely within the control of

6   the ALJ. *Sample*, 694 F.2d at 642. The Court should not "second-guess" this credibility

7   determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court

8   may not reverse a credibility determination where the determination is based on

9   contradictory or ambiguous evidence. *Id.* at 579.

10       In this case, the ALJ found that plaintiff's statements concerning the intensity,

11  persistence, and limiting effects of her symptoms to be not entirely credible (AR. 17).

12  The Court finds that the ALJ provided specific, cogent reasons supported by clear and

13  convincing evidence for disbelieving plaintiff's testimony and statements regarding the

14  severity of her symptoms. *See Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir. 2001);

15  *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

16       First, the ALJ found that "[t]he treatment records are inconsistent with the

17  claimant's allegations of debilitating limitations" (AR. 17). Plaintiff argues that the ALJ's

18  determination that the treatment records are inconsistent with her allegations is not

19  supported by substantial evidence because the ALJ erred in his treatment of the medical

20  evidence (Dkt. 13, p. 11). However, the Court has already found that plaintiff has failed

21  to establish that the ALJ erred in his treatment of the medical evidence. *See* Section 1,

22  *supra.* Moreover, the Court finds that the ALJ's determination is supported by substantial

1    evidence. For example, the ALJ noted that although plaintiff self-limited during treatment

2    with Dr. Allen, due to reports of pain, "she was still able to independently move about the

3    room or go from sitting to standing" (AR. 17). The ALJ noted that at least one treatment

4    provider observed that plaintiff had "abnormal pain response" (AR. 18). The ALJ also

5    noted that plaintiff's therapists observed that plaintiff "presented with more pain

6    limitations than was supported by the clinical observations" and that plaintiff did not

7    show initiative to return to work (*see* AR. 23). Such exaggerations support a negative

8    credibility determination. *See*, *e.g.*, *Latta v. Astrue*, 482 F. App'x 261, 262 (9th Cir.

9    2012); *Turner*, 613 F.3d at 1225; *Tonapetyan*, 242 F.3d at 1148.

10

11          Second, the ALJ discounted plaintiff's testimony and statements regarding her

12   symptoms by noting that "[o]bjective imaging is consistent with the claimant's ability to

13   perform light work" during the relevant period (AR. 19). Although the ALJ summarized

14   the objective imaging during the relevant period (*see* AR. 19), the ALJ does not explain

15   how the objective imaging undermines plaintiff's statements and testimony regarding her

16   limitations. Thus, the Court finds this second reason offered by the ALJ does not amount

17   to a clear and convincing reason to discount plaintiff's statements and testimony

18   regarding her limitations.

19          Third, the ALJ discounted plaintiff's testimony regarding her incontinence and

20   noted it was not as limiting as alleged (AR. 19). A determination that a claimant's

21   complaints are "inconsistent with clinical observations" can satisfy the clear and

22   convincing requirement. *Regennitter*, 166 F.3d at 1297; *see also Fisher v. Astrue*, 429 F.

23   App'x 649, 651 (9th Cir. 2011). Here, the ALJ noted that plaintiff's incontinence was

24

"generally dribbling" and the "soaking level of incontinence occurred three times from early June to early September 2009" (AR. 19). The ALJ noted that plaintiff's incontinence improved at times during the relevant period, and that a urology evaluation and bladder scan "showed no residual post voiding" (AR. 19). Further evaluation showed no abnormalities (AR. 19). Thus, the Court finds that the ALJ properly rejected plaintiff's allegations that her incontinence caused debilitating limitations preventing her from working.

Fourth, the ALJ found that plaintiff's tremors are not as debilitating as alleged either (AR. 20). The ALJ noted that plaintiff's tremors were not consistently present during several appointments during the relevant period. The medical records cited by the ALJ demonstrate substantial evidence supports his determination that plaintiff's allegations of disabling symptoms regarding her tremors is inconsistent with the longitudinal treatment record. Thus, the ALJ did not err in discounting plaintiff's testimony and complaints on this basis.

Fifth, the ALJ found that plaintiff's activities of daily living undermine her allegations of extreme and debilitating limitations (AR. 20). To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. *Smolen*, 80 F.3d at 1284. The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). First, such activities can "meet the threshold for transferable work skills." *Id.* Second, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to

1   the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674

2   F.3d at 1113. Under the second ground in *Orn*, a claimant's activities of daily living can

3   "contradict his other testimony." *Orn*, 495 F.3d at 639.

4        Here, the ALJ determined that plaintiff's activities "are consistent with her ability

5   to perform light work, but are inconsistent with her allegations of extreme and

6   debilitating limitations" (AR. 20). The ALJ listed a number of inconsistencies between

7   plaintiff's testimony and her activities of daily living. *See id.* For example, the ALJ noted

8   that although plaintiff alleged she could only stand for about 5 minutes and walk about

9   half a block, plaintiff went to the casino three times a week, "walking around for two

10  hours and seeing friends" (AR. 20). The ALJ also noted that plaintiff reported walking

11  for two miles during the relevant period and working out vigorously one year after her

12  alleged onset of disability (*see* AR. 20 citing AR. 331, 382). In short, the ALJ's

13  determination that plaintiff's activities of daily living contradict her other testimony is

14  supported by substantial evidence and the record as a whole. *Orn*, 495 F.3d at 639. Thus,

15  the ALJ did not err in discounting plaintiff's testimony on this basis.

16        If the overall credibility finding is supported by substantial evidence in the record,

17  the ALJ's determination is not invalid simply because one reason for discounting

18  plaintiff's credibility was improper. *See Tonapetyan*, 242 F.3d at 1148. The ALJ gave

19  four valid reasons for finding plaintiff lacked credibility (*see* AR. 19-20). Accordingly,

20  the ALJ's overall credibility decision is supported by substantial evidence in the record.

23

24

1        **(4)     Whether the ALJ properly evaluated the lay evidence.**

2        Plaintiff also argues the ALJ improperly rejected the lay witness evidence offered

3    by her husband, Rory Rayment, and asserts that "[t]he activities listed by the ALJ are not

4    meaningfully inconsistent with Mr. Rayment's observations" (Dkt. 13, pp. 17-18). Mr.

5    Rayment submitted a third party report and opined that plaintiff "has a hard time either

6    standing or sitting for any length of time" due to pain (AR. 235). Mr. Rayment noted that

7    plaintiff must alternate between standing, sitting, and lying down after completing any

8    chores or other activities (AR. 235-36). Mr. Rayment stated that plaintiff cooks breakfast

9    and dinner, helps with pets by feeding them, and does some household chores with help

10   from him (AR. 235-39). Mr. Rayment also noted that plaintiff is not social since her

11   injury (AR. 240).

12

13       The ALJ found that Mr. Rayment's opinion is "of less value" because it is

14   inconsistent with plaintiff's activities and the clinical observations in the record (AR. 25-

15   26). Testimony from "other non-medical sources," such as friends and family members,

16   *see* 20 C.F.R. § 404.1513 (d)(4), may not be disregarded simply because of their

17   relationship to the claimant or because of any potential financial interest in the claimant's

18   disability benefits. *Valentine*, 574 F.3d at 694 (citing *Dodrill v. Shalala*, 12 F.3d 915,

19   918-19 (9th Cir. 1993). An ALJ may disregard opinion evidence "if the ALJ 'gives

20   reasons germane to each witness for doing so.'" *Turner*, 613 F.3d at 1224 (quoting *Lewis*,

21   236 F.3d at 511).

22

23       First, the ALJ rejected Mr. Rayment's opinion because it was inconsistent with

24   plaintiff's activities in the record. Inconsistency between a claimant's activities and a lay

witness's statement is a germane reason to reject the lay testimony. *Mercer ex rel. Mercer v. Astrue*, No. C09-1826-RSM, 2010 WL 4511132, at *4 (W.D. Wash. Sept. 24, 2010), *aff'd,* No. C09-1826-RSM, 2010 WL 4511131 (W.D. Wash. Nov. 1, 2010) (citing *Carmickle*, 533 F.3d at 1164). Here, the ALJ noted that Mr. Rayment's statement regarding plaintiff's need to alternate between lying down, sitting, and standing was undermined by plaintiff's visits to the casino. The ALJ also noted that Mr. Rayment's own statement was inconsistent with respect to plaintiff's activities because Mr. Rayment also noted that plaintiff grocery shops for a couple of hours at a time. Accordingly, the ALJ properly discounted Mr. Rayment's lay witness statement as inconsistent with plaintiff's activities.

Second, the ALJ rejected Mr. Rayment's opinion as inconsistent with clinical observations in the record. Although an ALJ may not discredit "lay testimony as not supported by medical evidence in the record," *see Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citation omitted), an ALJ may discredit lay testimony if it conflicts with medical evidence, even though it cannot be rejected as unsupported by the medical evidence. *See Lewis*, 236 F.3d at 511 (An ALJ may discount lay testimony that "conflicts with medical evidence") (citation omitted); *Bayliss*, 427 F.3d at 1218 ("Inconsistency with medical evidence" is a germane reason for discrediting lay testimony) (citing *Lewis*, 236 F.3d at 511). Here, the ALJ noted that the work hardening program, in which plaintiff was able to participate for hours at a time, undermined Mr. Rayment's description that plaintiff is required to lie down between activities (AR. 26). Thus, the

second reason the ALJ offered to discount Mr. Rayment's lay witness statement is germane.

> **(5)** **Whether the ALJ erred in formulating the RFC, and thus erred at steps four and five.**

Finally, based on the foregoing assignments of error, plaintiff argues that the ALJ erred in formulating the RFC and thus erred at steps four and five (*see* Dkt. 13, pp. 18-19). Plaintiff's additional arguments appear premised entirely on her other arguments alleging the ALJ erred in finding her not disabled (*see* Dkt. 13, pp. 18-19). As the Court has already determined the ALJ's disability determination is supported by substantial evidence, the Court find the ALJ did not err in formulating the RFC and at steps four and five.

CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is **AFFIRMED**.

Dated this 7th day of November, 2016.

J. Richard Creatura
United States Magistrate Judge